IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICHAEL BASS, #49104-177,<br>        Petitioner, | §<br>§<br>§ | |
| v. | §<br>§ | CIVIL NO. 3:16-CV-3385-B-BK<br>(Criminal No. 3:14-CR-367-B-10) |
| UNITED STATES OF AMERICA,<br>        Respondent. | §<br>§<br>§ | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, Petitioner's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 was referred to the United States magistrate judge. Upon review of the relevant pleadings and applicable law, and for the reasons that follow, it is recommended that the motion be summarily **DISMISSED WITH PREJUDICE**.

**I. BACKGROUND**

In 2015, Petitioner pled guilty to possessing a controlled substance with intent to distribute and was sentenced to 240 months' imprisonment and a three-year term of supervised release. Crim. Doc. 633; Crim. Doc. 1019. On February 10, 2016, Petitioner's direct appeal was dismissed because it presented no non-frivolous issue. Crim. Doc. 2071. On December 6, 2016, Petitioner filed this timely, *pro se* motion to vacate sentence, seeking relief based on the holding in *Johnson v. United States*, ___ U.S. ___, 135 S. Ct. 2551, 2563 (2015), that imposing an increased sentence under the residual clause of the Armed Career Criminal Act (ACCA), 28 U.S.C. § 924(e), violates the Constitution's guarantee of due process. Doc. 2 at 4-5. Petitioner challenges, under *Mathis v. United States,* ___ U.S. ___, 136 S. Ct. 2243 (2016)*,* and *Hinkle v. United States*, 832 F.3d 569 (5th Cir. 2016), his career offender designation under the United States Sentencing Guidelines and his prior Texas convictions for evading arrest and delivery of a

controlled substance.  Doc. 2 at 4-5, 10-11; Doc. 4 at 2.[1]  Petitioner also claims ineffective assistance of counsel, prosecutorial misconduct, and violation of his due process rights.  Doc. 2 at 6; Doc. 2 at 12-15.

## II. ANALYSIS

After conviction and exhaustion or waiver of the right to direct appeal, the court presumes that a petitioner stands fairly and finally convicted.  *See United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998) (citing *United States v. Shaid*, 937 F.2d 228, 231‑32 (5th Cir. 1991) (en banc)).  Under 28 U.S.C. § 2255, a petitioner can collaterally challenge his conviction "only on issues of constitutional or jurisdictional magnitude."  *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001); *see* 28 U.S.C. § 2255 (requiring a showing that: (1) "the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "the court was without jurisdiction to impose such sentence"; (3) the sentence "was in excess of the maximum authorized by law"; or (4) the sentence is otherwise "subject to collateral attack.").

### A. *Johnson*, *Mathis,* and *Hinkle* Claims – Claims 1 and 2

Petitioner's reliance on *Johnson* is misplaced.  The United States Supreme Court held that the rule announced in *Johnson* does not apply to the Sentencing Guidelines.  *See Beckles v. United States*, ___ U.S. ___, 137 S. Ct. 886 (2017) (holding Sentencing Guidelines were not subject to a void for vagueness challenge under Fifth Amendment Due Process Clause).  That notwithstanding, Petitioner's sentence was not increased under the ACCA's residual clause – the only provision that *Johnson* found to be unconstitutional.  *See Johnson*, ___ U.S. ___, 135 S. Ct.

---

[1] The motion to amend is construed as a supplemental brief in support of his *Mathis/Hinkle* claim.  Doc. 4.

at 2563 (calling into question *only* the residual clause of the ACCA). Rather, the Presentence Report (PSR) (which was adopted at sentencing without change) calculated Petitioner's base offense level for possession with intent to distribute a controlled substance under U.S.S.G. § 2D1.1 (the drug trafficking guideline). *See* Crim. Doc. 859 at 15, PSR ¶¶ 49-54; Crim. Doc. 1022 at 1, Statement of Reasons (SOR).

Insofar as the PSR designated Petitioner as a career offender, that designation did not impact his sentence. The offense level of 40 calculated under section 2D1.1 was greater than the applicable offense level of 32 calculated under the career offender provisions; thus, the offense level of 40 was found to apply. *See* Crim. Doc. 859 at 16, PSR at ¶ 55. When the offense level for drug trafficking is higher than the career offender offense level, the Guideline range is "not the product of any career offender classification." *United States v. Reynolds*, ___ F. App'x ___, 2017 WL 3328154, at *5 (5th Cir. Aug. 3, 2017).

Finally, having concluded that Petitioner was not sentenced as a career offender, the Court need not address the related claims that Petitioner's prior state convictions for eluding arrest and delivery of a controlled substance no longer qualify as predicate offenses for the career offender designation. Doc. 2 at 5, 10-11; Doc. 4 at 1-2. Thus, Petitioner's first two claims fail.

**B. Ineffective Assistance of Counsel at Sentencing – Claim 3**

Petitioner's claim of ineffective assistance of counsel fares no better. To establish ineffective assistance of counsel, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984). To prove the deficient performance under *Strickland*, a petitioner must show that counsel made errors so serious that he or she was not functioning as the counsel guaranteed by the Sixth Amendment. *Id.* at 687. The proper measure of attorney performance is

reasonableness under prevailing professional norms. *Id.* at 688. That said, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.*

To demonstrate prejudice in the context of a guilty plea, the petitioner must show that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The petitioner bears the burden of demonstrating that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* Further, to prevail on a claim of ineffective assistance of counsel at sentencing, the petitioner must demonstrate that his sentence was increased on account of the deficient performance of defense counsel. *Glover v. United States*, 531 U.S. 198, 200, 203-204 (2001). Failure to establish either deficient performance or prejudice defeats the claim. *Strickland*, 466 U.S. at 697.

**1. Allegations of counsel's deficient conduct related to Agent Wilson**

Petitioner alleges counsel was ineffective for failing to: (1) file a motion to suppress the statement Petitioner made under coercion to Agent Wilson; (2) file an objection to the calculation of the drug weight; (3) file a motion for an evidentiary hearing; (4) conduct an adequate pretrial investigation, and (5) alert the court to the ongoing police corruption investigation into one of the case agents after Petitioner informed counsel that the case agent's house was raided. Doc. 2 at 6, 14. Petitioner's allegations are premised on Agent Wilson's proffer to the probation officer that Petitioner admitted in December 2014 to distributing $200,000 to $400,000 of methamphetamine per month – information used in the calculation of the drug quantity in the PSR, resulting in a guideline imprisonment range of 240 months (the statutory cap). Crim. Doc. 859 at 12 (PSR ¶ 39); Crim. Doc. 859 at 12 (PSR ¶ 35); Crim. Doc.

859 at 35 (PSR ¶ 130). Petitioner argues that Agent Wilson was corrupt and claims he coerced Petitioner into admitting that he sold $200,000-$400,000 of methamphetamine per month with continuous "threats … to cooperate or risk a life sentence." Doc. 2 at 12. Petitioner also alleges that Agent Grant Jack threatened him and was also corrupt, as evidenced by news reports that, in the fall of 2014, Jack was under investigation and that his home was searched by authorities. Doc. 2 at 12-13; Doc. 2 at 19-24 (Exh. A, news reports). Petitioner surmises Agent Wilson was corrupt because he worked with and was friends with Agent Jack. Doc. 2 at 13.

Additionally, Petitioner complains that when he informed defense counsel about Wilson's numerous threats, counsel "dismissed his alert." Doc. 2 at 12. Petitioner avers he subsequently "wrote a letter to his attorney [requesting him] to file a motion to supress [sic] the statement because it was untrue and made involuntary under coercion from Agent Wilson." Doc. 2 at 12. According to Petitioner, counsel did not file a motion and "responded finally by a letter advising him not to contest the drug amount." Doc. 2 at 12; Doc. 2 at 18 (counsel's letter).

Petitioner also claims he "was under extreme pressure not only by corrupt officers, but by his lawyer and the US Attorney[']s threats as well." Doc. 2 at 13. He explains, "[u]nder the extreme circumstances surrounding the prosecution in this case of officers who break the law . . . Petitioner felt their [sic] was no choice but to go along with whatever he was being directed to do including following his attorney[']s advice not to contest the drug weight calculation." *Id.*

Without regard to the veracity of Petitioner's numerous, scurrilous allegations, the Court finds that his claims of ineffective assistance of counsel are conclusory and vague and, thus, should be summarily dismissed. Petitioner's bare assertions that counsel (a) failed to file a motion to suppress Petitioner's statement to Agent Wilson, (b) failed to object to drug weight calculations, (c) failed to alert the court of police corruption, and (d) failed to request an

evidentiary hearing are insufficient to plead a Sixth Amendment claim. *See United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) (declining to consider vague ineffective assistance of counsel claim). Without specific allegations of counsel's deficient actions or inaction, Petitioner has not raised any issue of constitutional import. That is because "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." *Pineda*, 988 F.2d at 23 (quotations and quoted case omitted); *see also Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . to be of probative evidentiary value.").

The related claim that counsel failed to conduct an adequate pretrial investigation of Agent Wilson is also conclusory. Doc. 2 at 6, 14. Petitioner must demonstrate with specificity what the investigation would have revealed and how it would have altered his plea. *See United States v. Curtis*, 769 F.3d 271, 276, 277-278 (5th Cir. 2014) (cited cases omitted) ("To establish [a] failure to investigate claim, [a defendant] must allege with specificity what the investigation would have revealed *and how it would have benefitted him.*") (quoted case omitted, emphasis in original). Yet, his pleadings fail to identify what evidence could have been discovered, and how such evidence would have altered the outcome of his case. Again, Petitioner's self-serving, unsworn, conclusory assertions are insufficient.

Ultimately, the main focus of Petitioner's allegations is the calculation of the guideline drug quantity and base offense level and counsel's alleged failure to object at sentencing to the PSR insofar as it relied on the admission to Agent Wilson. However, Petitioner fails to establish that his counsel's performance was constitutionally deficient.

First, apart from his self-serving, belated assertions, Petitioner does not identify a non-frivolous basis for finding that he was not responsible for the 38.8 kilograms of

Page **6** of **14**

methamphetamine on which the PSR relied in calculating his base offense level. Crim. Doc. 859 at 15, PSR ¶49. Defense counsel is not ineffective for failing to raise a frivolous objection. *See* United States v. Preston, 209 F.3d 783, 785 (5th Cir. 2000) ("[F]ailure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness."); United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) (explaining that "[a]n attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue"); *see also* United States v. Lewis, 467 F. App'x 298, 299 (5th Cir. 2012) (*per curiam*) (same as to meritless sentencing guideline objection).

Second, counsel's advice not to object to the drug amount because Petitioner "could lose acceptance of responsibility and other potential favorable sentencing considerations" could be considered sound strategy. *See* Doc. 2 at 18 (copy of counsel's June 17, 2015 letter response to Petitioner). "[A] frivolous objection or denial of relevant conduct may be a basis for withholding a reduction for acceptance of responsibility." United States v. Holmes, 675 F. App'x 491, 492 (5th Cir. 2017); *see also* U.S.S.G. § 3E1.1, comment. (n.1(A)) ("a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility."). Moreover, as promised, counsel prepared a detailed *Memorandum in Aid of Sentencing* and, at sentencing, he argued that Petitioner should receive a downward departure based on his drug addiction, which spanned his entire life, and his critical need for rehabilitation. Crim. Doc. 966; Crim. Doc. 1101 at 4-5.

Even if counsel was deficient, Petitioner cannot demonstrate *Strickland* prejudice – namely that but for his counsel's allegedly deficient performance he would have received a lower sentence. *Glover*, 531 U.S. at 203-04. Indeed, all evidence suggests Petitioner was a high-level

dealer.  Based on his own admissions recited in the PSR and confirmed by his co-conspirators, his guideline imprisonment range would change little, even if the Court had disregarded the information provided by Agent Wilson that Petitioner "admitted that he purchased pound and kilogram-quantities of methamphetamine from [his] supplier," whom he had met at a Substance Abuse Felony Punishment Facility, and that he in turn distributed it to co-defendant Wiltcher. Crim. Doc. 859 at 12, PSR ¶ 35-36.  At a minimum, Petitioner would be responsible for distributing 28 grams of methamphetamine – the very conservative amounts of 12 and 16 ounces, based solely on the admissions of co-defendant Wiltcher and the statement of a confidential source of information (SOI). Crim. Doc. 859 at 12, PSR ¶ 35-37.  Specifically, Wiltcher admitted receiving one ounce of methamphetamine from Petitioner on two or three occasions sometime between April and June 25, 2014, and observing him in possession of at least 10 ounces of methamphetamine on one occasion.  *Id.*, PSR ¶ 36.  Additionally, the SOI confirmed receiving between 4 and 8 ounces of methamphetamine, two or three times, weekly, from Petitioner until July 2014.[2]  *Id.*, PSR ¶ 37.

At 28 grams per ounce, Petitioner would have been responsible for at least 784 grams of methamphetamine, which under U.S.S.G § 2D1.1(c)(5) results in a base offense level of 30. Adding four levels for importation of methamphetamine and obstruction of justice, but decreasing by three levels for acceptance of responsibility (even though Petitioner likely would have lost it based on the frivolous objection to the drug weight calculation), would still result in a total offense level of 31.[3]  This coupled with a Criminal History Category of VI would produce a

---

[2] The Court's calculation is based on an implausibly low quantity – four ounces, two times a week for only two weeks, when the SOI's statement clearly suggests more.

[3] Since an adjusted offense level of 34 (a base offense level of 30 plus four levels for importation of methamphetamine and obstruction of justice) would exceed the career offender offense level

guideline imprisonment range of 188-235 months – the top of which is a mere five months below the 240-month guideline term of imprisonment in the PSR and adopted at sentencing. Crim. Doc. 859 at 35, PSR ¶ 130; Crim. Doc. 1101 at 4.

Again, the Court's alternative calculations are exaggeratedly low, but demonstrate that other evidence corroborated Agent Wilson's proffer regarding Petitioner's admissions. Moreover, the resulting alternative range reflects the benefit of a three-level decrease for acceptance of responsibility, which, Petitioner likely would have lost by frivolously contesting the drug weight. Thus, Petitioner has not demonstrated any prejudice resulting from counsel's allegedly deficient performance. *Glover*, 531 U.S. at 203-04.

In sum, Petitioner's claim fails because he has not established that his counsel was constitutionally ineffective for failing to pursue Petitioner's claim that, *inter alia*, the information provided by Agent Wilson regarding Petitioner's drug quantity was unreliable.

### 2. Counsel's failure to challenge criminal history and career offender designation

Next, Petitioner posits counsel should have objected to Defendant's criminal history and career offender designation. However, he provides no other details from which the Court can glean that a challenge to his lengthy criminal history would not have been frivolous and that it would have affected the outcome of his plea. *See* Preston, 209 F.3d 783, 785 ("[F]ailure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness."); *Pineda*, 988 F.2d 22, 23 (declining to consider vague ineffectiven assistance claim). Moreover, as noted previously, the PSR did not enhance Petitioner's sentence under the career offender provisions. Crim. Doc. 859 at 16, PSR ¶ 55. As such counsel was not

---

of 32, Petitioner would still be sentenced under the drug guideline and not the career offender provision. Crim. Doc. 859 at 16, PSR ¶ 55.

ineffective for failing to object. *Preston*, 209 F.3d at 785. Also, insofar as Petitioner seeks to challenge the District Court's application of the Sentencing Guidelines, his claim is not cognizable on section 2255 review. *See United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999); *Segler*, 37 F.3d at 1134 (misapplication of sentencing guidelines does not give rise to constitutional issue cognizable under section 2255). Accordingly, these claims of ineffective assistance of counsel have no merit.

### 3. Counsel's failure to file a notice of appeal

Contrary to Petitioner's assertion, counsel filed a notice of appeal following sentencing. Crim. Doc. 1053. Therefore, any claim of ineffective assistance of counsel on this ground fails.

### C. Coercion and Duress –Claim 3

Intermingled with his ineffective assistance claims, Petitioner complains of "extreme pressure" from the crooked officers, his counsel, and the prosecutor and he also references the Court's "Rule 11 Advisement." Doc. 2 at 13-14. To the extent Petitioner suggests that his plea was involuntary, the record belies his claim of coercion and threats. In his written plea agreement, Petitioner affirmed that his plea of guilty was freely and voluntarily made and was not the result of force or threats or of promises apart from those set forth in the plea agreement. Crim. Doc. 624 at 5. He further agreed that he was fully satisfied with his lawyer's legal explanations of the plea agreement, his rights affected by the agreement, as well as alternatives available to him other than entering into the plea agreement. *Id.* at 5-6. A defendant must overcome the presumption of regularity and "great evidentiary weight" accorded to court records, and Petitioner has failed to do so. *See United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (holding that signed, unambiguous plea agreement "is accorded great evidentiary weight" when determining whether plea is entered voluntarily and knowingly).

Moreover, at re-arraignment, while under oath and in response to the inquiries of the Magistrate Judge, Petitioner affirmed that: (1) he voluntarily and of his own free will entered into the plea agreement; (2) he wanted the Court to accept the plea agreement; (3) all of the terms of his agreement with the government were contained in the plea agreement and plea agreement supplement; (4) outside of the written plea agreement, no one had made any promise or assurance to him of any kind in an effort to induce him to plead guilty; and (5) no one had mentally, physically, or in any other way attempted to force him to plead guilty. Crim. Doc. 1117 at 13. Petitioner offers no reliable evidence to rebut his affirmations at re-arraignment that his plea was knowing and voluntary, and that it was not coerced. *See Cervantes,* 132 F.3d at 1110 (defendant ordinarily may not refute his sworn testimony given under oath at plea hearing). Petitioner's self-serving, uncorroborated, unsupported and unsworn assertions are insufficient. *See Id.* (petitioner must produce "independent indicia of the likely merit of [his] allegations" to overcome re-arraignment testimony and plea agreement, which refuted petitioner's allegations).

Other circumstances tend to contradict Petitioner's claim as well. Petitioner had ample opportunity after the entry of his guilty plea and through sentencing—almost four months—to advise the Court that Agent Wilson had forced him to admit that he had distributed $200,000 to $400,000 of methamphetamine and that he was dissatisfied with defense counsel's failure to raise the issue before or at sentencing. Yet, Petitioner never expressed any concern about the voluntariness of his guilty plea, the alleged coercion of Agent Wilson, the substantial drug quantity for which the PSR held him responsible, or his counsel's allegedly deficient performance, either before or at sentencing. On the contrary, during sentencing, Petitioner acknowledged that he had reviewed the PSR and had no question about it; his counsel also confirmed that Petitioner had no objections to the PSR. Crim. Doc. 1101 at 4. That Petitioner

did not complain about Agent Wilson's alleged coercion and corruption until he filed his *Anders* response on direct appeal on November 12, 2015, casts serious doubt on the credibility of his present assertions, which, under these circumstances, appear self-serving.[4]

Finally, Petitioner substantially benefited from the plea agreement, which permitted him to plead guilty to a superseding information that capped his prison exposure at 240 months (versus a guideline imprisonment range of 360 months to life) and that resulted in the dismissal of the superseding indictment. *See* Crim. Doc. 859 at 15, PSR ¶ 53 (noting that "the maximum authorized sentence of 240 months is 120 months below the bottom of the advisory guideline range"); Crim. Doc. 859 at 35, PSR ¶130; Crim. Doc. 859 at 36, PSR ¶131. Accordingly, insofar as Petitioner suggests that his plea was involuntary and coerced, his claim fails.

### D. Prosecutorial Misconduct and *Brady* Violation – Claim 4

Although Petitioner alleges that the prosecutors failed to disclose the ongoing criminal investigation of Agent Jack, in violation of *Brady* and *Giglio*[5], Doc. 2 at 14, his voluntary guilty plea precludes him from asserting any *Brady*/*Giglio* claim. *See United States v. Conroy*, 567 F.3d 174, 178-79 (5th Cir. 2009) (holding that guilty plea "precludes [defendant] from claiming that the government's failure to disclose [exculpatory evidence] was a *Brady* violation."); *Orman v. Cain*, 228 F.3d 616, 617 (5th Cir. 2000) ("*Brady* requires a prosecutor to disclose exculpatory evidence for purposes of ensuring a fair trial, a concern that is absent when a defendant waives trial and pleads guilty."); *see also Alvarez v. City of Brownsville*, 860 F.3d 799, 803 (5th Cir. 2017) (relying on *Conroy* to hold there is no constitutional right to exculpatory evidence when defendant pleads guilty, and guilty plea precludes him from asserting a *Brady* claim).

---

[4] The *Anders* response is also not sworn under penalty of perjury.
[5] *Brady v. Maryland,* 373 U.S 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972).

### E. Evidentiary Hearing

Finally, Petitioner requests an evidentiary hearing to address the allegations raised in his section 2255 motion. Doc. 2 at 16. Petitioner is not entitled to an evidentiary hearing, however. "When the files and records of a case make manifest the lack of merit of a section 2255 [motion], the trial court is not required to hold an evidentiary hearing." United States v. Hughes, 635 F.2d 449, 451 (5th Cir. 1981); *see also* Cervantes, 132 F.3d at 1111 (petitioner was not entitled to an evidentiary hearing because he did not meet his burden of proof under section 2255). Accordingly, because Petitioner's claims lack merit for the reasons stated above, no evidentiary hearing is required in this section 2255 proceeding.

### III. RECOMMENDATION

For the foregoing reasons, it is recommended that the motion to vacate sentence under 28 U.S.C. § 2255 be summarily **DISMISSED WITH PREJUDICE**.[6]

**SIGNED** October 2, 2017.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

---

[6] *See* Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts ("If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party.").

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

      A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute,* 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE